# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ABDUL SALEH, beneficiary of a Visa Petition filed by TEHETENA DAGNA TEKLEWOLD,

      Petitioner,

vs.

ERIC H. HOLDER, JR., Attorney General of the United States

      Respondent.

Case No.: 2:13-cv-00586-GMN-GWF

**ORDER**

Pending before the Court is the Motion for Summary Judgment (ECF No. 27) filed by Respondent Eric H. Holder, Jr. ("Respondent") on December 10, 2013 and the Motion for Summary Judgment (ECF No. 28) filed by Petitioner Abdul Saleh ("Petitioner") that same day. The parties filed their Responses in Opposition (ECF Nos. 32–33) on February 10, 2014. Respondent filed his Reply to Petitioner's Response (ECF No. 34) on February 24, 2014.

For the reasons discussed in this Order, the Court **Denies** Respondent's Motion for Summary Judgment (ECF No. 27) and **Grants** Petitioner's Motion for Summary Judgment (ECF No. 28).

## I.   BACKGROUND

This matter arises from an appeal filed by Petitioner pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 (the "APA"), seeking review of a Board of Immigration Appeals' (the "BIA") decision affirming the denial of his Form I-130 Petition to classify him as an immediate relative of a United States citizen.  The operative facts are as follows:

Petitioner is a thirty-four-year-old native and citizen of Eritrea. (Undisputed Facts ¶ 1, ECF No. 27-2; I-130 Petition, Admin. Record at 93).  On April 12, 2010, he arrived in the

United States with permission to remain in the country for only three months. (I-130 Petition, Admin. Record at 93).  Less than two months after his arrival in the United States, Petitioner married Tehetena Dagna Teklewold ("Teklewold"), a fifty-one-year-old native of Ethiopia and a naturalized American citizen, in Las Vegas, Nevada on June 1, 2010. (Undisputed Facts ¶¶ 2, 4–5, ECF No. 27-2; I-130 Petition, Admin. Record at 93).  A month later on July 9, 2010, Teklewold filed an I-130 Petition with the United States Citizenship and Immigration Services (the "USCIS") on behalf of Petitioner. (*Id.* ¶ 6).  According to the I-130 Petition, Petitioner had been married to Yesra M. Ferej, until their marriage ended on April 6, 2010, six days prior to his arrival in the United States. (I-130 Petition, Admin. Record at 93).

On November 8, 2010, Petitioner and Teklewold participated in an interview with a USCIS officer. (Undisputed Facts ¶ 7, ECF No. 27-2).  During the interview, Petitioner could not remember the name of his former spouse, to whom he had purportedly been married for five years, nor could he remember the address of the home where he purportedly had been living with Teklewold for the previous five months. (NOID, ECF No. 5-1; G-325 Bio. Information, Admin. Record at 95).  However, Petitioner was able to remember the address of the home where his sister lived. (NOID, ECF No. 5-1).  Additionally, the only documentary evidence provided by Petitioner and Teklewold at the interview was an order for checks for a joint banking account placed six days prior to the interview. (*Id.*).

On December 9, 2010, USCIS officers conducted a site visit at the purported home of Petitioner and Teklewold and at the purported home of Petitioner's sister. (Undisputed Facts ¶ 8, ECF No. 27-2).  During the site visit of Petitioner's purported home with Teklewold, the USCIS officers encountered Teklewold and a fifty-year-old man named Shekib Abubeker, whom Teklewold described as her best friend for over ten years. (USCIS Site Visit Memo, Admin. Record at 89).  Petitioner was not at the home, and Teklewold claimed that he had

/ / /

1  spent the previous night at his sister's house because his sister was going to take him to the
2  DMV in the morning. (*Id.*).

3  When Teklewold showed the USCIS officers around the three-bedroom house, they
4  observed that the master bedroom did not contain any items of male clothing or anything that
5  could be identified as belonging to Petitioner. (*Id.*). When asked about Petitioner's belongings,
6  Teklewold showed the officers to a second bedroom where they found one pair of denim jeans,
7  two pairs of pants, five shirts, and a small drawer with socks and male undergarments. (*Id.*; Site
8  Visit Notes, Admin. Record at 91). However, the officers noted that none of the items could be
9  identified as belonging to Petitioner. (USCIS Site Visit Memo, Admin. Record at 89).
10 Additionally, Teklewold did not show the officers any other belongings in the house that she
11 claimed belonged to Petitioner other than these few items of clothing. (USCIS Site Visit Memo,
12 Admin. Record at 89–90; Site Visit Notes, Admin. Record at 91–92).

13 USCIS officers also conducted a site visit at the purported home of Petitioner's sister on
14 December 9, 2010. (Undisputed Facts ¶ 8, ECF No. 27-2). At the home, the officers
15 encountered a man who identified himself as Mohamed Ibrahim. (USCIS Site Visit Memo,
16 Admin. Record at 90). Ibrahim told the officers that he lived at the home with his wife, his ex-
17 wife, his three children with his ex-wife, and his ex-wife's mother. (*Id.*). He also told the
18 officers that his ex-wife was Petitioner's sister but that he had not seen Petitioner in three or
19 four days and that Petitioner had never spent the night at his house. (*Id.*). Ibrahim also stated
20 that Petitioner lived with Teklewold, whom he identified as Petitioner's wife. (*Id.*).

21 On August 25, 2011, the USCIS issued a Notice of Intent to Deny the Petition ("NOID")
22 to Petitioner. (Undisputed Facts ¶ 9, ECF No. 27-2). The NOID stated that the discrepancies in
23 Petitioner and Teklewold's interview and site visit along with the lack of documentary evidence
24 indicated that Petitioner and Teklewold had not entered a good faith, bona fide marriage.
25 (NOID, ECF No. 5-1). Therefore, the USCIS advised Teklewold that it intended to deny the

petition and that she had thirty days to submit additional evidence establishing a bona fide marriage before it would deny the petition. (*Id.*).

Teklewold responded to the NOID by submitting the following additional evidence: (1) an unsworn letter signed by Teklewold, (Teklewold Letter, Admin. Record at 67–68); (2) a copy of an interim Nevada Identification Card issued to Petitioner on October 25, 2010 that lists his address as the home where he purportedly lives with Teklewold, (Temp. ID Card, Admin. Record at 69); (3) a copy of an Arizona driver's license issued to Petitioner on December 8, 201 that lists his address as being in Phoenix Arizona, (AZ Driver's License, Admin. Record at 70); (4) a copy of a Nevada driver's license issued to Petitioner on September 28, 2011 that lists his address as the home where he purportedly lives with Teklewold, (Nev. Driver's License, Admin. Record at 71); (5) a portion of a document from the USCIS indicating that Petitioner has been approved for some kind of application on October 4, 2010, but omitting any part of the document identifying the type of application, (USCIS App. Approval, Admin. Record at 72–73); (6) a copy of a receipt from the Social Security Administration indicating that Petitioner had applied for a social security card on October 12, 2010, (SSA Receipt, Admin. Record at 74); and (7) a portion of US Bank's Operating Procedures Manual that discusses consumer identification cards, (US Bank Manual, Admin. Record at 75–85).  In her letter, Teklewold blames the inconsistencies in the interview statements made by Petitioner on his inability to speak English fluently and claims that his clothes are kept in a different bedroom because he is a smoker and she does not want his clothes hanging next to hers. (Teklewold Letter, Admin. Record at 67–68).  She also states that she and Petitioner did not have a joint bank account at the time of her interview because Petitioner was still waiting to get his social security card. (*Id.*).

On January 12, 2012, the USCIS found that the marriage was fraudulent and denied the I-130 Petition, citing the same discrepancies that had been identified in the NOID and noting

that the supplemental submissions along with the existing record did not establish the bona fides of the marriage. (USCIS Denial, Admin. Record at 62–66).

Teklewold appealed the denial of the I-130 petition to the BIA on July 12, 2012. (Notice of Appeal, Admin. Record at 5–6; Appeal Brief, Admin. Record at 16–20).  Attached to Teklewold's appeal brief was the following additional evidence: (1) copies of Teklewold and Petitioner's 2010 federal income tax returns, showing them residing at the same house, (2010 Tax Returns, Admin. Record at 27–33); (2) a receipt for a December 13, 2010 payment to the Nevada Department of Motor Vehicles for a Nevada driver's license issued to Petitioner, (DMV Receipt, Admin. Record at 41); (3) a copy of a gas bill for the first two weeks of January 2011 sent to Teklewold or Petitioner at their purported home, (Gas Bill, Admin. Record at 45); (4) an affidavit from Abubeker stating that he has known Teklewold for over eight years and that Petitioner and Teklewold live together as husband and wife, (Abubeker Affidavit, Admin. Record at 47); (5) an affidavit from Petitioner's sister stating that Petitioner and Teklewold live together as husband and wife and are treated as husband and wife within the Ethiopian community, (Salih Affidavit, Admin. Record at 49); (6) four unannotated photographs showing Petitioner and Teklewold together, (Photographs, Admin. Record at 51–52); and (7) copies of Teklewold and Petitioner's 2011 federal income tax returns, showing them residing at the same house, (2011 Tax Returns, Admin. Record at 54–60).

On September 5, 2012, the BIA, citing the same discrepancies as the USCIS, dismissed the appeal after finding that the additional documents "did not meet her burden of proof" for establishing Petitioner's eligibility for classification as an immediate relative. (BIA Decision, ECF No. 5-5).  However, the BIA also concluded that there was insufficient evidence of a fraudulent marriage and reversed that finding. (*Id.*).

On October 5, 2012, Petitioner filed a petition for review of the BIA's decision with the United States Court of Appeals for the Ninth Circuit. (Ninth Cir. Petition, ECF No. 5-6).  Then

on April 1, 2013, the Ninth Circuit issued an order granting Petitioner's request to transfer the present matter to this Court. (Transfer Order, ECF No. 1).  Before this Court, the parties have filed the present motions for summary judgment in which Respondent seeks affirmance and Petitioner seeks reversal and remand of the BIA's decision. (Resp. MSJ Memo. 13:19-24, ECF No. 27-1; Pet. MSJ 6:7-12, ECF No. 28).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

In reviewing an administrative decision under the APA, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record

permitted the agency to make the decision it did. *City & Cty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (affirming the use of summary judgment to decide this legal question). "Under the APA, judicial review is usually limited to determining whether agency action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *United States v. Bean*, 537 U.S. 71, 77 (2002). In applying this standard, a court must be "highly deferential, presuming the agency action to be valid," and the court must not "substitute its judgment for that of the agency." *J & G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1051 (9th Cir. 2007) (quotations omitted).

## III. DISCUSSION

### A. Statutory Framework

In order for an alien spouse of a United States citizen to obtain lawful permanent resident status, the United States citizen spouse must file a Form I-130 Alien Relative Petition on behalf of the alien beneficiary to classify him as an "immediate relative." 8 U.S.C. § 1154(a)(1)(A)(i). Immediate relatives, which include spouses, of a United States citizen are not subject to the annual quotas imposed on other family-based immigration classifications and may "jump the line" by immediately applying for lawful permanent resident status. 8 U.S.C. § 1151(b)(2).

In I-130 visa petition cases, the United States citizen bears the burden of proving that the noncitizen beneficiary is eligible to receive the benefits of the visa. 8 U.S.C. § 1361; *see also Gipson v. I.N.S.*, 284 F.3d 913, 915 (8th Cir. 2002). This burden requires the citizen to provide evidence of their citizenship along with a valid certificate of marriage and proof of the legal termination of all previous marriages of both the citizen and the beneficiary. 8 C.F.R. § 204.2(a)(2). Once, "a petitioner of an immediate relative petition proves that his marriage meets the requirements for the approval of an I-130, he is entitled, as a matter of right, to the

/ / /

approval of his petition." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013). "The decision of whether to approve an I-130 visa petition is a nondiscretionary one." *Id.*

However, the beneficiary of an I-130 petition is not eligible for immediate relative status if the marriage upon which the petition is based was a sham marriage entered into for the purpose of evading immigration laws. 8 U.S.C. § 1154(c); *Vasquez v. Holder*, 602 F.3d 1003, 1014 (9th Cir. 2010) ("A marriage that is entered into for the primary purpose of circumventing the immigration laws, referred to as a fraudulent or sham marriage, does not enable an alien spouse to obtain immigration benefits." (internal quotations omitted)). To reject an I-130 petition based on marriage fraud, the USCIS must find that there is "substantial and probative evidence" that the marriage was a sham. 8 C.F.R. § 204.2(a)(1)(ii). Accordingly, "[t]he Government has the burden of providing substantial and probative evidence that the prior marriage was a sham."[1] *Vy Nhu Hoang Dinh v. United States*, 2:12-CV-01795-APG, 2014 WL 3513379, at *8 (D. Nev. July 14, 2014); *see also Matter of Kahy*, 19 I. & N. Dec. 803, 806 (B.I.A. 1988) ("[W]here there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage."); *Abufayad v. Holder*, 632 F.3d 623, 631 (9th Cir. 2011) (holding "that the BIA's determination that the Government met its burden of introducing 'some evidence' of Abufayad's inadmissibility [was] supported by substantial evidence").

---

[1] Under the statute and corresponding regulations, there are certain situations where there is a presumption of marriage fraud and the petitioner seeking an immediate relative classification for their spouse bears the burden at the outset of proving that the marriage was bona fide. *See e.g.* 8 U.S.C. § 1255(e) (placing the burden on petitioners that marry during the pendency of removal or deportation proceedings to show by clear and convincing evidence that the marriage was entered into in good faith); 8 C.F.R. § 204.2(a)(1) (placing the burden on petitioners to show by clear and convincing evidence that the marriage was entered into in good faith when the permanent resident spouse was accorded permanent resident status through a previous marriage to a United States citizen or permanent resident less than five years before the current marriage). These situations, however, are not applicable here.

If the USCIS discovers substantial and probative evidence of marriage fraud, then it must issue a NOID to the petitioner informing her of the derogatory information in question and affording her an opportunity to present evidence rebutting the information before a decision is rendered. 8 C.F.R. § 103.2(b)(8)(iv), (b)(16)(i); *see Zemeka v. Holder*, 989 F. Supp. 2d 122, 130 (D.D.C. 2013). Upon receiving the NOID, the burden shifts to the petitioner to establish that the marriage was not entered into for the purpose of evading immigration laws. *Vy Nhu Hoang Dinh*, 2014 WL 3513379, at *8 (citing *Zemeka*, 989 F. Supp. 2d at 130). "Of course the burden shifts to the petitioner only if the determination of fraud underlying the NOID is based on substantial evidence." *Id.*; *see Kahy*, 19 I. & N. Dec. at 806. Therefore, if the agency determines that there is not substantial and probative evidence of marriage fraud and a petitioner has otherwise provided sufficient evidence to show the noncitizen beneficiary is eligible to receive immediate relative status, then the USCIS must approve the I-130 petition. *See Ching*, 725 F.3d at 1155; *Vy Nhu Hoang Dinh*, 2014 WL 3513379, at *8 ("To reject an I–130 Petition [for marriage fraud], … there must be 'substantial and probative evidence' that the 'beneficiary entered into a marriage for the primary purpose of obtaining immigration benefits.'").

### B. Application to Teklewold's Petition

In its decision, the BIA affirmed the denial of the I-130 petition because Teklewold had failed to "sufficient[ly] resolve the questions raised about the bona fides of the marriage," but then the BIA went on to find that the evidence of fraud was insufficient to support the USCIS's finding of a sham marriage. (BIA Decision, ECF No. 5-5). The BIA, therefore, found that the Government had failed to meet its burden of showing by substantial and probative evidence that the marriage was a fraud while simultaneously confirming denial of the I-130 petition based on the marriage being fraudulent. Such a finding is not permitted under the statutory framework. *See* 8 U.S.C. § 1154(c), § 1361; C.F.R. § 204.2(a)(1)(ii); (a)(2).

Because the BIA found that there was not substantial and probative evidence that Petitioner's marriage to Teklewold was a fraud, the burden of proof never shifted to Petitioner to prove that the marriage was bona fide. *Vy Nhu Hoang Dinh*, 2014 WL 3513379, at *13. Accordingly, section 1154(c) cannot bar the approval of Teklewold's I-130 petition once the BIA determined that there was insufficient evidence to find that the marriage was fraudulent.[2] Therefore, the BIA's confirming of the USCIS's denial of the petition based upon evidence of a fraudulent marriage was "not in accordance with law" and must be reversed.[3] *See Bean*, 537 U.S. at 77.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Respondent's Motion for Summary Judgment (ECF No. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Summary Judgment (ECF No. 28) is **GRANTED**. This matter is remanded to the USCIS to re-adjudicate the Form I-130

---

[2] Without a finding that the USCIS had showed substantial and probative evidence that the marriage was a fraud, Teklewold was only required to prove that Petitioner was eligible to receive the benefits of the visa by providing evidence of her citizenship along with a valid certificate of marriage and proof of the legal termination of all previous marriages. 8 U.S.C. § 1361; 8 C.F.R. § 204.2(a)(2). However, she may not have complied with this requirement at the time she filed the petition because there is no evidence of Petitioner's divorce from his previous wife in the Administrative Record. *See* (I-130 Petition, Admin. Record at 93–101 (showing only the Marriage Certificates, Teklewold's Certificate of Naturalization, and Teklewold's Decree of Divorce)). If no evidence of this divorce was provided in the petition, this omission would support a denial of the petition. *See* 8 U.S.C. § 1361; 8 C.F.R. § 204.2(a)(2). However, neither the USCIS nor the BIA based its decision to deny the petition on this potential oversight, and neither party has raised it as an issue in their briefs.

[3] The Court notes that the primary evidence the BIA relied on in confirming the denial—(1) the lack of possessions identified as belonging to Petitioner in the purported martial home, (2) Petitioner's inability to remember his ex-wife's name or the address of the purported marital home during the November 8, 2010 interview, and (3) the lack of any evidence showing a commingling of assets—may have been sufficiently substantial and probative to show that the marriage in question was fraudulent. *See* (BIA Decision, ECF No. 5-5). Despite this possibility, the Court does not find that the BIA was arbitrary or capricious in holding that this evidence was insufficient for the USCIS to meet its burden in establishing a fraudulent marriage. However, after accepting the BIA's finding that the USCIS failed to show substantial and probative evidence of marriage fraud, it was erroneous for the BIA to then affirm the denial of the petition based upon the evidence of marriage fraud.

Petition filed by Petitioner and Teklewold on July 9, 2010 (Admin. Record 93–101) in accordance with this Order.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 18th day of September, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge